ORIGINAL

LUJAN AGUIGUI & PEREZ LLP
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Defendant Erica Reyes Borja*

FILED
DISTRICT COURT OF GUAM
MAR 10 2006
MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>vs.<br>ERICA REYES BORJA and<br>RICKY ANTHONY NELSON,<br><br>　　　　　　Defendants. | CRIMINAL CASE NO. 05-00049<br><br>**DEFENDANT'S PRESENTENCE INVESTIGATION REPORT RESPONSES AND SENTENCING MEMORANDUM** |

Defendant, Erica Borja, responds to the Presentence Investigation Report dated January 18, 2006, as follows:

1.  Paragraphs 23, pertaining to the Offense Conduct:

　　Ms. Borja makes clarifies and corrects paragraph 23 as follows:

　　(1) The statement she made on May 15, 2005 was not completely accurate.

　　(2) Ms. Borja truly believed she and Rick Nelson were legitimately engaged to be married. She loved Mr. Nelson and intended to marry him. She met his parents, they discussed wedding plans, and wedding rings were purchased.

　　(3) In hindsight, Ms. Borja thinks that Mr. Nelson might have been using her, and did not have genuine wedding plans with Ms. Borja.

(4) Ms. Borja admits she brought methamphetamine into Guam from California by placing it in her body. She also admits to the facts she stipulated to in her Plea Agreement.

(5) However, Ms. Borja was not involved in the details of bringing the methamphetamine into Guam. Although she had conversations discussing the possibility of making some money by doing so, she had never imported drugs previously. The last time she had traveled to Guam was 15 years earlier, in 1990.

(6) This was the first time she did it.

(7) The details of the plan, how much methamphetamine was involved, how much she might get paid, who and how many people were involved in the plan were not entirely known to her. Ms. Borja was not involved in the discussions which led to her secreting the methamphetamine in her body.

(8) Ms. Borja's statement where she describes seeing a letter in a 7-11 bathroom is untrue. In fact, there was no letter. She did enter a 7-11 bathroom, with Mr. Nelson. At the time, she was under the influence of methamphetamine. She was in love with Mr. Nelson. While in the bathroom, Mr. Nelson placed methamphetamine into his body. Ms. Borja did the same. However, she recalls that she was "not herself" at the time. She remembers "she did it for Rick."

(9) Although there were discussions she might get paid the details of how much, when, and by whom, were known to Mr. Nelson, not Ms. Borja. The truth is she would have done it whether she received payment or not; she did it for Rick.

(10) Ms. Borja was not involved in the packaging of the methamphetamine.

(11) Ms. Borja did send money to Annette Gonzales. However, at the time, she did not really know Annette Gonzales or Lisa Cole. It was Lisa Cole who had asked her to send Ms.

USA vs. Erica Reyes Borja
District Court Criminal Case No. 05-00049
Defendant's Presentence Investigation Report
Reponses and Sentencing Memorandum

2

Case 1:05-cr-00049   Document 57   Filed 03/10/2006   Page 2 of 13

Gonzales money. On one occasion Sean Cole told Ms. Borja he owed Ms. Gonzales money for bail she had in the past posted for him.

2. Paragraph 29-31, pertaining to Acceptance of Responsibility:

Ms. Borja accepts responsibility for her actions. To clarify her role in the offense she restates her clarifications and corrections contained in paragraph 1. She further clarifies that she understood she would be paid in cash for bringing drugs to Guam and that Sean Cole and Rick Nelson were going to make the decision. The whole issue of payments however, and the ultimate delivery of the drugs on Guam, was to be decided by others and not Ms. Borja. From her perspective and understanding, she could have been paid in cash, in drugs, or nothing at all.

3. Paragraphs 27 and 36, pertaining to Role in the Offense:

Ms. Borja respectfully requests that a USSG § 3B1.2 mitigating role adjustment be applied.

**Application Note 2:**

A mitigating role adjustment applies only when there are multiple participants in an offense. In the instant case, it appears there were multiple participants in the offense, including but not limited to: Ricky Nelson, Sean Cole, Lisa Cole, and Annette Gonzales. See PSR identification of "Related Cases," "Co-defendants," and paragraphs 11 through 14.

**Application Note 3(A):**

Ms. Borja was substantially less culpable than the average participant. She had never imported drugs previously. She had no prior criminal record. It was Rick Nelson who had been identified by intelligence records of being involved in an alleged drug ring smuggling drugs into Guam. Exhibit A. Mr. Nelson is the person who got Ms. Borja involved in this offense. The PSR states, "Nelson expressed remorse for getting [Ms. Borja] involved in this case…" PSR paragraph

USA vs. Erica Reyes Borja  3
District Court Criminal Case No. 05-00049
Defendant's Presentence Investigation Report
Reponses and Sentencing Memorandum

Case 1:05-cr-00049   Document 57   Filed 03/10/2006   Page 3 of 13

58. Ms. Borja had never previously been a part in a drug ring. In the instant offense, her role was that of a drug courier and she did it for Rick, not for profit.

Additional factors demonstrating her limited role and diminished culpability:

(1) She did not participate in the initial planning of the smuggling from California to Guam, only the secretion of the drugs into her body on the way to the airport.

(2) She was not an existing member of a drug ring.

(3) She did not plan, organize or coordinate the offense.

(4) She was not aware of the scope of the scheme or structure of the enterprise and the activities of others.

(5) She was not certain to receive payment for her actions.

(6) She was "not herself" at the time she began participating in the importation.

(7) She was not involved in the ultimate plan to deliver the drugs.

(8) When Ms. Borja was questioned by customs officials in Hawaii, she was not a slick and smooth drug ring member; she "appeared tense and babbled when answering questions." Exhibit B.

**Application Note 3(B):**

Ms. Borja pled guilty to one of the indicted offenses, Conspiracy to Distribute Methamphetamine Hydrochloride. Accordingly, she did not receive a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by her actual conduct. Under these circumstances, a mitigating role adjustment may be warranted.

**Application Note 4:**

Ms. Borja was a minimal participant. She is among the least culpable in the apparently ongoing "drug ring" which imported drugs from California to Guam. This was her first time to

USA vs. Erica Reyes Borja 4
District Court Criminal Case No. 05-00049
Defendant's Presentence Investigation Report
Reponses and Sentencing Memorandum

Case 1:05-cr-00049 Document 57 Filed 03/10/2006 Page 4 of 13

import drugs. She agreed to do it for Mr. Nelson, her fiancé, on their way to the airport, while he secreted drugs into his body. She lacked knowledge or understanding of the scope and structure of the enterprise and of the activities of others.

4. Paragraph 97: Ms. Borja has cooperated and remains willing and able to render further assistance. Included in her assistance to date, Ms. Borja has disclosed the names of approximately six (6) targets who sell drugs on Guam. Additionally, Ms. Borja respectfully asks this Court to impose a sentence below the calculated offense level.

5. Defendant's offense level calculation:

(1) Base offense level under USSG 2D1.1(a)(3)(c)(4): 32

(2) USSG 5C1.2 application of -2: 30

(3) USSG 3E1.1(a) and (b) application of -3: 27

(4) USSG 3B1.2 application of -4: 23

(5) Sentence range: 46-57 months

(6) Minus additional departures the court might apply.

**SENTENCING MEMORANDUM**

A strict application of the sentencing guidelines on this defendant would result in an unduly harsh sentence for Ms. Borja. The PSR indicates the following which the Court might consider in fashioning its sentence:

1. Paragraph 13. Annette Gonzales received a sentence of 78 months imprisonment. The Government might explain the contrasting levels of culpability between Ms. Gonzales, whose involvement in the "drug ring" was apparently significant and Ms. Borja, who for the first time in her life participated in this offense by acting as a courier on a single occasion. Ms. Borja should receive a sentence significantly lower than sentences imposed upon other, more culpable participants in the offense.

USA vs. Erica Reyes Borja 5
District Court Criminal Case No. 05-00049
Defendant's Presentence Investigation Report
Reponses and Sentencing Memorandum

Case 1:05-cr-00049   Document 57   Filed 03/10/2006   Page 5 of 13

2. Paragraph 17. The PSR indicates that Ms. Borja has remained compliant with her conditions. She has explained to counsel that she has complied with all of her conditions, always reports as required and on time, and always willing to do whatever is asked of her, promptly. She remains willing to do more if given the opportunity. Ms. Borja would comply with any sentencing conditions the Court might impose upon her and she is extremely likely to be successful in any rehabilitation opportunities the Court might provide.

3. Paragraphs 51-53. Ms. Borja is fundamentally a good person who as a result of bad relationships and misguided decisions got into trouble. The PSR depicts a person traumatized by a rough upbringing and a troubled past, raised by an abusive alcoholic and gambling father, and abandoned by her mother. She is not a defendant who needs a harsh sentence to rehabilitate or deter her from future criminal conduct. Ms. Borja would surely benefit from and take full advantage of a probation or reduced sentence imposition without posing a danger to the community and without diminishing the seriousness of the offense.

4. Paragraph 54. Despite the trauma she suffered as a youth, Ms. Borja, unlike many other cases the Court may have encountered, did not enter a life of juvenile crime or adopt "attitude problems." Perhaps a telling example of the good person Ms. Borja is, is shown by the fact that even though her father was abusive, an alcoholic, a gambler, and often inexplicably absent, Ms. Borja came back to Guam to take care of him when he became ill.

5. Paragraph 55. Unfortunately, Ms. Borja's domestic difficulties continued from childhood to adulthood. In 1994 she began a relationship with Raymond Flores. The PSR stated that "Flores could become violent." Ms. Borja related to counsel that Mr. Flores was physically abusive towards her, subjecting her to punching, kicking, bruising, black eyes, pulled hair, and

USA vs. Erica Reyes Borja 6
District Court Criminal Case No. 05-00049
Defendant's Presentence Investigation Report
Reponses and Sentencing Memorandum

Case 1:05-cr-00049 Document 57 Filed 03/10/2006 Page 6 of 13

degrading treatment. She explains that Mr. Flores had drug problems. Ms. Borja endured the abuse.

6. Paragraph 57. Her relationship problems continued to worsen. In 2004 Ms. Borja became involved with Rick Nelson. They became engaged. Ms. Borja related to counsel that she truly loved Nelson, that she intended to marry him and she believed their engagement was genuine. She now believes that he may have used her, and has doubts that he ever valued their relationship the way she did. As a result of her relationship with Nelson she became involved in the instant offense.

7. Paragraph 58. Mr. Nelson expressed remorse for involving Ms. Borja in this case.

8. Paragraph 59. Mr. Flores indicated that Ms. Borja helped raise his three (3) children. Counsel has observed Ms. Borja on numerous occasions. She strikes counsel as a truly good and nurturing person who has made some bad decisions primarily resulting from relationships with people who have caused her harm.

9. Paragraph 60. Mr. Flores described Ms. Borja as being "vulnerable prey" for Nelson. Mr. Flores knows that Ms. Borja was "used by Nelson to bring drugs into Guam."

10. Paragraphs 62 and 64. Those close to her describe Ms. Borja as a "dreamer" who likes to fantasize, a "slow-learner" with a "soft heart...unable to refuse people's requests...and is easily influenced."

11. Paragraph 70. The Probation Office described Ms. Borja as "cooperative."

12. Paragraph 73. Ms. Borja has not tested positive for the use of controlled substances.

13. Paragraphs 64 and 74-76. Ms. Borja is a slow learner with a limited education. She was retained in eighth grade then "socially promoted." She withdrew from high school. At the time she had a grade point average of 0.5.

USA vs. Erica Reyes Borja
District Court Criminal Case No. 05-00049
Defendant's Presentence Investigation Report
Reponses and Sentencing Memorandum

7

Case 1:05-cr-00049  Document 57  Filed 03/10/2006  Page 7 of 13

14. Paragraph 97. Ms. Borja has cooperated and remains able and willing to cooperate further.

18 USC 3553(a) provides the Court with factors it might consider in imposing a sentence stating, "The Court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection." (Emphasis added).

Of particular applicability to this defendant is subsection (a)(1): The nature and circumstances of the offense and the history and characteristics of the defendant:

Ms. Borja made a major mistake and committed a crime. She accepts responsibility for what she has done. Others were more culpable and involved in an apparently ongoing drug ring, to which Ms. Borja had not previously been a member. She had never done it before. However, based upon her traumatic upbringing, bad relationships and some misguided decisions, she became vulnerable prey, and was used by someone she loved and intended to marry, Rick Nelson, who now expresses remorse for bringing her into this case. Ms. Borja's is not a danger to the community. She does not need to be deterred from future criminal conduct. While the offense is serious, she has already served significant time in jail, and a sentence involving substantial jail time would not be necessary to demonstrate the seriousness of the offense, to promote respect for the law, or provide just punishment. Ms. Borja is an extremely respectful person. A sentence involving substantial imprisonment would not be "necessary" in this case. Ms. Borja would be particularly receptive to and successful in any probation or reduced sentence opportunities this Court might provide.

/ / /

/ / /

USA vs. Erica Reyes Borja  
District Court Criminal Case No. 05-00049  
Defendant's Presentence Investigation Report  
Reponses and Sentencing Memorandum

8

Case 1:05-cr-00049    Document 57    Filed 03/10/2006    Page 8 of 13

Ms. Borja, a defendant in this case, respectfully requests that this Court sentence her to time served, or to a sentence of limited incarceration.

Dated this 9th day of March, 2006.

LUJAN AGUIGUI & PEREZ LLP

By: *[signature]*

**PETER C. PEREZ, ESQ.**
*Attorney for Defendant Erica Reyes Borja*

USA vs. Erica Reyes Borja
District Court Criminal Case No. 05-00049
Defendant's Presentence Investigation Report
Reponses and Sentencing Memorandum

9

Case 1:05-cr-00049   Document 57   Filed 03/10/2006   Page 9 of 13

# EXHIBIT A

REMARKS:
Subject RICK ANTHONY NELSON was encountered at gate #14 when he was in route
to Guam via flight COA 001. Nelson was also identified per intelligence
providing information of an alleged ring attempting to smuggle drugs into
Guam. Nelson's check-in luggage upon examination revealed a pair of bloody
underwear, tissue paper found inside the pockets of a pair of shorts and two
unused condoms. SCBPO Higa was apprised and authorized a pat down. The factor
considered for the pat down stemmed from a previous outbound incident in whic
bloody tissue was discovered inside a carry-on bag which belonged to a male
subject who was found to be transporting drugs internally (body cavity). The
pat down resulted negative. During routine questioning, Nelson stated that hi
mother had paid for his ticket and said that his mother was a "home maker". H
went on to say that he worked for a building maintenance business in Guam.
Nelson stated dissatisfaction with the pat down and kept stating, "This is no
right, you'll hear from me". An "Outbound Examinations And Personal Search"
pamphlet was given to Nelson before boarding his flight to Guam.


 (PF1=HELP)  (PF2=FLD HELP)  (PF3=MAIN MENU)  (PF4=PREV MENU)  (PF7=PREV PAGE)
 (PF8=NEXT PAGE)                                               (PF16=PRINT)

# EXHIBIT B

```
17:31:45:99            TECS II - INCIDENT LOG           09/11/2005 T2MJ8114
TID=Q1LM                       REMARKS                             T2PJ8142
INCIDENT REPORT NUMBER:   20053205000103                           A
NAME: ERIKA R BORJA                                        PAGE    1
```

REMARKS:
On 05/13/05, Ms Erika BORJA was interviewed at the gate area for outbound examination. Ms. BORJA was traveling with Mr. Rick NELSON. Both subjects were the last passengers to arrive at gate 14 when Continental airlines agents announced the gate closure.

During the interview, Ms. BORJA claimed that she was unemployed living in Guam where she met Mr. NELSON. She said that she knew him for 8 months and that they were engaged to be married. Both she and Mr. NELSON visited his mother in Hayward California. Subject had approximately $10 in her small purse. She had a cash ticket worth $4502. Subject appeared tense and babbled when answering questions.

Based on above reasons, a patdown was requested and approved by SCBPO Higa. Prior to patdown, subject was asked if she was currently having her menstrual period and if she was wearing any menstrual pads or tampon. Ms. BORJA stated

MORE...